IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


WILL HIGLIN,                                                    No. 6:25-cv-00590-AA

            Plaintiff,                                  **OPINION AND ORDER**

      v.

**STATE OF OREGON, OREGON LIQUOR
AND CANNABIS COMMISSION; CRAIG
PRINS, an individual; and JOHN DOES
1-10, individuals,**

            Defendants.

_____

**AIKEN, District Judge**

Plaintiff brings a claim for breach of contract and a claim under 42 U.S.C. § 1983 for a Fourteenth Amendment Due Process (Stigma-Plus) violation against Defendants State of Oregon; Oregon Liquor and Cannabis Commission ("OLCC"); Craig Prins, an individual, (together, the "State Defendants"); and John Does 1-10. The State Defendants move for dismissal under Fed R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Motion to Dismiss, ECF No. 6, is GRANTED.

Page 1 – OPINION AND ORDER

## BACKGROUND

Platiniff Will Higlin was employed by OLCC from May 2014 to March 10, 2023, at which time his employment was terminated. Am. Compl. ¶ 4. He served as Deputy Director of the agency from March 2017 until his termination. *Id.*

In January 2023, Plaintiff was given a reprimand by his employer following an investigation into a practice that allowed OLCC employees and members of the public to purchase rare liquor by directly contacting the OLCC warehouse (the "Customer Service Program"). *Id.* ¶¶ 5-10.

Plaintiff alleges that in January 2023, following the reprimand, then-Executive Director Steve Marks and then-Chairman Paul Rosenbaum of OLCC offered Plaintiff a deal wherein Plaintiff would (1) "apply for retirement and vacate his position as Deputy Director on July 31, 2023"; (2) "From February 1, 2023, through July 31, 2023, Plaintiff would assist the OLCC Director in hiring a new Deputy Director and help with training"; and (3) continue as an employee of OLCC until completion of a new warehouse, during which time he would "assist recruitment for a new OLCC Director and other senior management" and "lead employee transition to the new OLCC facility located in Canby, Oregon, including serving as morale and liaison for employees with the change management consultant hired by the OLCC." *Id.* ¶ 11.

Plaintiff filed for retirement on January 31, 2023. *Id.* ¶ 12

In February 2023, *The Oregonian* media outlet published an article on the Customer Service Program, specifically mentioning Plaintiff and directing online

Page 2 – OPINION AND ORDER

readers to his reprimand and interview with investigators. *Id.* ¶ 14. Contemporaneously, Governor Tina Kotek issued a public letter to OLCC's Board of Commissioners, in which she "urg[ed] the commission to install new leadership and remove the managers and executive leadership who have taken advantage of their access and authority to benefit themselves." *Id.* ¶ 15.

One week later, on February 15, 2023, Steve Marks resigned as Executive Director of OLCC, and soon after, Governor Kotek appointed Craig Prins as the new Executive Director of OLCC. *Id.* ¶ 17-18.

In early March 2023, Plaintiff learned that Prins intended to remove Plaintiff from his position, and on March 10, 2023, Plaintiff was terminated by his employer. *Id.* ¶¶ 19-20.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a

factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges that his termination was a breach of contract as to the agreement with Marks and Rosenbaum. *Id.* ¶¶ 24-26.

Plaintiff further alleges that statements by Governor Kotek and Prins, to which Plaintiff did have an adequate opportunity to respond, resulted in his termination and constitutes a 42 U.S.C. § 1983 Fourteenth Amendment Due Process violation (Stigma-Plus). *Id.* ¶ 29-35.

State Defendants claim that the alleged contract does not satisfy the statute of frauds as it was an oral contract that could not be completed in less than a year. Def. Mot. at 3-4. State Defendants further claim that the § 1983 claim fails because (1) Prins did not make any of the statements and (2) a § 1983 action cannot be maintained against the State of Oregon and OLCC under established precedent. *Id.* at 4-5.

### I.    Breach of Contract

Under Oregon law, a contract "that by its terms is not to be performed within a year from the making" is "void unless it, or some note or memorandum thereof . . . is in writing and subscribed by the party to be charged." ORS 41.580(1)(a). Such a contact may be enforceable under the doctrine of partial performance if a party proves "1) conduct corroborating and unequivocally referable to the oral agreement, and 2)

Page 4 – OPINION AND ORDER

'equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel or in facts justifying the avoidance of unjust enrichment or relief from fraud.'" *Kraft v. Arden,* No. CV. 07-487-PK, 2008 WL 4866182 (D. Or. Nov. 7, 2008) (quoting *Roadway Express, Inc. v. Jossy,* 853 F.2d 736, 739 (9th Cir.1988)).

Here, Defendants assert that Plaintiff (1) did not plead the existence of a writing; (2) the contract could not be completed in less than one year; and (3) Plaintiff's actions do not meet the standard for partial performance.

## A. Existence of a Writing

Plaintiff relies on the following allegation from the Amended Complaint to show that he successfully pleaded the existence of a writing: "OLCC Executive Director Marks acknowledged to Plaintiff that his retirement filing was accepted and *affirmed the agreement between the OLCC and Plaintiff.*" Am. Compl. ¶ 13 (emphasis added).

Plaintiff is short on details of this affirmation. It could have been in a letter, an email, a phone call, or in passing in a hallway. The only thing pleaded is that the agreement was "affirmed." The Court cannot read more facts into that sentence than it plainly contains. In the Response to Defendants' Motion, Plaintiff argues that Marks acknowledged the agreement by email, Pl. Resp. at 5, but no such allegation is included in the Amended Complaint.

Plaintiff, in alleging that Marks "affirmed the agreement" did not plead the existence of a writing.

Page 5 – OPINION AND ORDER

## B. Period of the Contract

"In general, a verbal stipulation to render some particular service which fixes no definite or contingent time for its performance, but which is capable of performance within one year after the same is made, is not controlled by [ORS 41.580(1)(a)], although the act probably will not be, and was not expected to be fulfilled within that time." *Kaiser Found. Health Plan of the Nw. v. Doe*, 136 Or. App. 566, 578 (1995), *opinion modified on reconsideration*, 138 Or. App. 428, (1996) (quoting *Duniway v. Wiley,* 85 Or. 86, 89, 166 P. 45 (1917)).  This rule is not about probabilities, but possibilities. The question is not whether the contract would likely be completed within a year, but whether it possibly could have been.

Plaintiff states that the alleged contract was to run "until the new warehouse was complete (then expected completion was the summer of 2025)." Am. Compl. ¶ 11. This is arguably outside the statute of frauds because there is some possibility that the warehouse could be completed well ahead of schedule. But this is not Plaintiff's only statement about the period of the contract.

More particularly, Plaintiff alleges that "he had been offered a continued role through 2025 and part of 2026 and had relied on that agreement to his detriment." Am. Compl. ¶ 33. According to Plaintiff, the role was to last through "part of 2026," which makes the agreement longer than the "expected completion" of the warehouse. This statement is more definite as to the period of the contract, and, on a motion to dismiss, is taken as true.

Page 6 – OPINION AND ORDER

Plaintiff pleaded an agreement that could not be completed within one year. The contract is subject to ORS 41.580(1)(a).

## C. Partial Performance

Plaintiff argues in his response that partial performance is pleaded as necessary to defeat the statute of frauds argument. To wit, he applied for retirement, as contemplated by the alleged agreement.

That is insufficient and implausible. The conduct must be "unequivocally referable to the oral agreement." A person can retire for many reasons, not only in reliance on a contract. Additionally, Plaintiff did not, in fact, retire. He *applied* for retirement. And he did so in the wake of whistleblower complaint that led to a reprimand. It is implausible, as currently pleaded, that his actions were *unequivocally* referable to the oral contract.

The second prong of the partial performance analysis is equally unavailing. There is no allegation of fraud or unjust enrichment on the part of the Defendants that would lead the Court into equity.

The Complaint fails to plausibly plead partial performance of the alleged oral contract as necessary to defeat a motion to dismiss. The contract is within the statute of frauds and no writing was pleaded, so the claim for breach of contract must be dismissed.

## II.   Due Process (Stigma-Plus) § 1983

To succeed on a § 1983 action, a plaintiff must demonstrate that was defendant was "(1) acting under color of State law, (2) caused (3) [p]laintiffs, as U.S. citizens or

Page 7 – OPINION AND ORDER

persons within the jurisdiction of the United States, (4) a deprivation of rights, privileges, or immunities secured by the Constitution and laws." *Chaudhry v. Aragon*, 68 F.4th 1161, 1171 (9th Cir. 2023). Causation may be established either by (1) personal participation in the injury or (2) "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id. at* 1169.

A "stigma-plus" claim under § 1983 and the Fourteenth Amendment requires (1) "the public disclosure of a stigmatizing statement by the government;" (2) "the accuracy of which is contested;" (3) "*plus* the denial of 'some more tangible interest[ ] such as employment.' " *Chaudhry* 68 F.4th at 1170 (9th Cir. 2023) (quoting *Ulrich v. City & C'nty of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002)) (alterations in original).

The Court begins by disposing of Defendants State of Oregon and OLCC. Under well-established precedent, neither of these Defendants can be the target of a § 1983 claim, with the exception of a claim for injunctive relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989*); R.W. v. Columbia Basin College*, 77 F.4th 1214, 1220 (9th Cir. 2023). No injunctive relief is claimed, so these Defendants are immune from such an action.

Defendants assert that the Amended Complaint does not allege that Mr. Prins participated in the injury, as the Complaint does not contain any allegation of public disclosure by Mr. Prins regarding Plaintiff.

Page 8 – OPINION AND ORDER

Again, Plaintiff attempts to plead facts in his Response, but that is unavailing. The question is whether this was sufficiently pleaded in the Amended Complaint. It was not.

Plaintiff alleges that "a person with the Governor's Office or Department of Administrative Services" spoke to the media about the OLCC investigation. Am. Compl. ¶ 14. OLCC then released documents to *The Oregonian* in response to a public records request. *Id.* More media attention followed. *Id.* Governor Kotek made public statements that were highly critical of OLCC and its leaders, and Attorney General Ellen Rosenblum announced a criminal investigation. *Id.* ¶¶15-16.

None of those disclosures or public statements involved Mr. Prins, nor does Plaintiff allege that Mr. Prins set any of these actions in motion.

Plaintiff does allege disparaging statements by Mr. Prins. *Id.* ¶ 19. But those statements were made in a letter and email to Plaintiff. *Id.* ("Prins wrote to Higlin…"). Plaintiff does not allege that anyone else was copied on or received the letter. This is not a "public disclosure" by Mr. Prins, as is necessary for a stigma-plus claim. *See Ramirez v. Oregon Health & Sci. Univ.,* No. 3:24-CV-01470-SB, 2026 WL 353204 at *20 (D. Or. Feb. 9, 2026) (plaintiff presented no evidence that third parties viewed written statements in medical records that were basis of stigma-plus claim).

Plaintiff has failed to state a claim against Mr. Prins for stigma-plus under § 1983, and the other Defendants are immune from such an action.

Page 9 – OPINION AND ORDER

## CONCLUSION

For the reasons explained above, State Defendants' Motion to Dismiss, ECF No. 6, is GRANTED. Plaintiff is given leave to amend his Amended Complaint within 30 days consistent with this opinion.

It is so ORDERED and DATED this ____19th____ day of March 2026

 /s/Ann Aiken
ANN AIKEN
United States District Judge

Page 10 – OPINION AND ORDER