Matthew Wand, OSB #004189
mwand@lynchmurphy.com
Michelle Littlewood, OSB #246381
mlittlewood@lynchmurphy.com
Lynch Murphy McLane LLP
3 Centerpointe Dr., Suite 160
Lake Oswego, Oregon 97035
Telephone: (541) 383-5857
Facsimile: (541) 383-3968

Attorneys for Plaintiff Will Higlin

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| WILL HIGLIN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STATE OF OREGON, OREGON LIQUOR AND CANNABIS COMMISSION; and JOHN DOES 1-5, individuals,<br><br>　　　　Defendants. | Case No. 6:25-cv-00590-AA<br><br>**AMENDED COMPLAINT**<br><br>**(Breach of Contract; 42 U.S.C. § 1983 ("Stigma- Plus" Due Process Violation)**<br><br>**Jury Demand** |

For Plaintiff's claims against Defendants, Plaintiff alleges:

1.

Plaintiff is a resident of Deschutes County, Oregon.

2.

Defendant Oregon Liquor and Cannabis Commission (OLCC) is an agency of the government of the State of Oregon.

///

///

Page 1 -　　　CERTIFICATE OF SERVICE

3.

The John Doe defendants are all persons employed by the OLCC who took adverse action against Plaintiff regarding all matters and claims herein.  Though the names of the John Doe defendants are at present unknown, Plaintiff will be able to identify them after formal discovery has been conducted.

4.

Plaintiff worked for the OLCC from approximately May 2014 to March 10, 2023. Plaintiff was initially hired as Director of Licensing in May 2014, became Director of Cannabis in February 2015, and in November 2015 was promoted to Statewide Director of Licensing and Compliance overseeing all licensing of liquor and cannabis.  Finally, in March 2017, he was promoted by the OLCC as the Deputy Director of the entire agency.  During his extensive time working at the OLCC, Plaintiff had ample and complete opportunity to fully learn and understand the policies relevant to the facts regarding the claims in this matter.

5.

When Plaintiff was hired at the OLCC, and until his wrongful termination, the OLCC had a "customer service" policy regarding the distribution and sale of rare bottles of alcohol.  Prior to his employment, Plaintiff had only a passing knowledge of the existence of premium and limited-run whiskeys.  The "Customer Service" policy was unwritten but followed throughout the OLCC, requiring the distribution warehouse and retail stores upon request from any customer (including OLCC employees) to directly ship premium whiskeys and alcohol to purchase by the requesting customer at full retail price.  At all times material, until ordered otherwise, Plaintiff followed this policy in dealing with Oregon citizens requesting the opportunity to purchase such premium and rare products.

6.

Early in his employment with the OLCC, Plaintiff requested additional information regarding the "Customer Service" policy, and was informed by the then-chair of the OLCC and

Page 2 -    AMENDED COMPLAINT

all other directors and personnel that this process was the subject of internal research and that it was fully approved, ethical, and legal, for both the general public and also OLCC employees at all levels because they are also part of the "general public." At all times material, Plaintiff reasonably relied on this information and research.

7.

Further to the "Customer Service" approach, any member of the general public could call the distilled spirits program at the warehouse, and their requests if able to be fulfilled, would be fulfilled. This was used by lobbyists, elected officials, the general public, restauranteurs, and retail liquor stores throughout Plaintiff's employment with the OLCC.

8.

In July 2022, after a terminated employee sent a "whistleblower" message alleging the "Customer Service" approach was somehow unethical, the OLCC conducted an internal personnel investigation. In addition, the "Customer Service" approach was immediately halted pending completion of a written policy reflecting the unwritten long-standing policy that had been universally followed. As part of this investigation, various employees were questioned and told that any answers later found to be untruthful could result in additional discipline up to and including termination.

9.

The OLCC investigators interviewed Plaintiff as part of that investigation, representing to Plaintiff that the information would remain confidential and sealed in Plaintiff's personnel file.

10.

In January 2023, Plaintiff received a reprimand in his employee file following the investigation. Plaintiff disagreed with his reprimand but waived his rights to contest the reprimand because he was assured the matter was over. Further, he was assured that the reprimand would remain strictly confidential as part of his employment file.

///

Page 3 -    AMENDED COMPLAINT

11.

Following that reprimand, in mid-January 2023, with knowledge of the reprimand given to Plaintiff, OLCC Executive Director Steve Marks and OLCC Chairman Paul Rosenbaum asked Plaintiff to stay working at the OLCC through the summer to help put in place personnel for succession planning in light of the fact that many of the management-level personnel were all nearing retirement age. OLCC Executive Director Marks and OLCC Chairman Rosenbaum had the authority to bind the OLCC to an agreement with Plaintiff. The two proposed the following transitions to Plaintiff's employment:

A. Instead of applying for retirement a couple of years into the future, which was at the time when Plaintiff had intended to apply, Plaintiff agreed to apply for retirement and vacate his position as Deputy Director on July 31, 2023;

B. From February 1, 2023, through July 31, 2023, Plaintiff's duties as Deputy Director would change to include assisting the OLCC Director in hiring a new Deputy Director and training new employees; and

C. From August 1, 2023 until the new warehouse was completed (then expected completion was the summer of 2025 or before), Plaintiff would continue as an employee to a) assist recruitment for a new OLCC Director and other senior management; and b) lead employee transition to the new OLCC facility located in Canby, Oregon, including serving as morale and liaison for employees with the change management consultant hired by the OLCC.

12.

The parties discussed these matters through written correspondence, including contemporaneous emails acknowledging the understanding.

13.

Plaintiff agreed to the proposal from OLCC Chairman Rosenbaum and OLCC Executive Director Marks. Plaintiff, in reliance on their proposal and in full performance of his obligations,

Page 4 -    AMENDED COMPLAINT

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: 541.383.5857 | F: 541.383.3968
3 CENTERPOINTE DRIVE, SUITE 160
LAKE OSWEGO, OREGON 97035

applied for retirement on January 31, 2023, and continued with his employment with the OLCC, performing the new duties of his position per the proposal.

14.

OLCC Executive Director Marks acknowledged to Plaintiff that his retirement filing was accepted and affirmed the agreement between the OLCC and Plaintiff.

15.

On information and belief, in early February 2023, a person with the Governor's Office or Department of Administrative Services (DAS) told a member of the media in Oregon about the internal OLCC investigation mentioned above.  The OLCC, through Defendant John Does 1-5, released documents about the aforementioned investigation to *The Oregonian* after a public records request.  Thereafter, on February 8, 2023, in an article entitled "Top OLCC officials kept popular booze — including Pappy Van Winkle — for themselves, diverting it from public," *The Oregonian* stated that Plaintiff was "implicated" in a "scheme" involving several OLCC employees "to set aside for their own use some of the most sought-after bourbons," and was "reprimanded" as a result.  The article, which was widely distributed throughout the state, contained a prominent hyperlink to Plaintiff's and others' written reprimands and to the investigative interview record, which the OLCC, through its investigator, had promised would remain confidential.  Media coverage inside and outside of Oregon about the aforementioned investigation was extensive.

16.

Also on February 8, 2023, Oregon Governor Tina Kotek publicly released a letter to OLCC's Board of Commissioners about the aforementioned investigation.  The letter disparaged Plaintiff and his OLCC colleagues by implication, falsely stating:  "[M]y administration became aware that leaders within this agency abused their position for personal gain per their own admission in an internal investigation.  This behavior is wholly unacceptable.  I will not tolerate wrongful violations of our government ethics laws."  Governor Kotek advocated for Plaintiff to

Page 5 -    AMENDED COMPLAINT

be fired: "I urge the commission to install new leadership and remove the managers and executive leadership who have taken advantage of their access and authority to benefit themselves." At this time, as a result of the investigation, Governor Kotek knew or should have known that these statements were false and unsupported, rather, all OLCC employees including Plaintiff were following the policies of the OLCC regarding these issues. On about the same date, Governor Kotek called on Oregon Attorney General Ellen Rosenblum to investigate the OLCC and recommend stronger protocols for ensuring ethics laws are followed by OLCC employees.

17.

On February 10, 2023, Oregon Attorney General Ellen Rosenblum announced that the Oregon Department of Justice was opening a criminal investigation into the matter involving potential ethics violations related to the purchase of liquor by some OLCC staff and possibly others. Laura Gomez, OLCC Human Resources Director, notified Plaintiff in an email communication and letter dated February 17, 2023, that he had been placed on non-disciplinary administrative leave with pay while the criminal investigation was pending.

18.

On February 15, 2023, Steve Marks resigned his position as the Executive Director of the OLCC.

19.

Upon the recommendation of Governor Kotek, the OLCC appointed Craig Prins as the Executive Director of the OLCC on or about February 15, 2023.

20.

On March 9, 2023, Plaintiff was made aware via email and regular mail of the new OLCC Executive Director Craig Prins' intent to remove Plaintiff from his position as the OLCC Deputy Director as of March 10, 2023. Prins wrote that he had a goal of restoring public trust in the OLCC and that all OLCC employees had to conduct themselves with integrity. Prins wrote

Page 6 -    AMENDED COMPLAINT

to Higlin that he had placed his own interests before the interests of the OLCC and the public and that his continued employment with the OLCC was compromised by his conduct and poor judgment in discerning and adhering to professional boundaries, including those established by law and policy. Prins wrote that Plaintiff's conduct "is inconsistent with holding a role of trust within the organization and with our stakeholders. Furthermore, such conduct compromises the public's trust in the fairness and integrity of OLCC and in the competence of the management of the OLCC. I do not have trust and confidence in your ability to function as Deputy Director during this challenging period of rebuilding this agency's reputation and restoring public trust." Nothing in Prins' letter, however, was given for Plaintiff's employment termination other than the same conduct that resulted in the reprimand discussed above.

21.

The OLCC investigation performed by Defendants did not meet the minimum standards for like investigations, and Plaintiff's treatment during and after the investigation was materially different than other employees. On information and belief, other personnel who acted similarly to Plaintiff were put on administrative leave for over a year and hired back; some admitted taking part in this process but were never disciplined; others who had participated in the Customer Service policy were never interviewed are still employed and/or have been promoted.

22.

On March 14, 2023, *The Oregonian* published an article entitled "State fires 3 officials embroiled in OLCC bourbon scandal." In the article, Plaintiff was named as having been terminated from his job for the reasons called for in Governor Kotek's letter of February 8, 2023. Upon information and belief, *The Oregonian* was only able to prepare the article due to potentially confidential documentation and/or insider attestation provided by Defendant John Does 1-5.

23.

Plaintiff served a tort notice on the OLCC on June 30, 2023.

Page 7 -    AMENDED COMPLAINT

24.

After being terminated from the OLCC, Plaintiff has been unable to obtain a job as a manager with a public agency or private business.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**
**(Against Defendant OLCC)**

25.

Plaintiff realleges all preceding paragraphs as if fully stated herein.

26.

The proposal by OLCC Executive Director Marks and OLCC Chairman Rosenbaum, and its acceptance by Plaintiff, constituted a binding agreement.

27.

As of March 9, 2023, Plaintiff had fully performed all of his obligations of the proposal offered to him by OLCC Executive Director Marks and OLCC Chairman Rosenbaum and agreed to by Plaintiff.

28.

Defendant OLCC, through the actions of its Executive Director Prins on March 9, 2023, as described above, breached the agreement between the OLCC and Plaintiff.

29.

As a result of the breach of the agreement mentioned above, Plaintiff has suffered damages in the lost wages and out-of-pocket benefits costs from March 10, 2023, until the present, an amount not less than $450,000, plus interest from the dates that such wages were due.

///

///

///

///

Page 8 -    AMENDED COMPLAINT

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: 541.383.5857 | F: 541.383.3968
3 CENTERPOINTE DRIVE, SUITE 160
LAKE OSWEGO, OREGON 97035

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 – Stigma-Plus Due Process Violation)**
**(Against Defendant John Does 1-5)**

30.

Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

31.

Defendant John Does 1-5, acting under color of state law, and in concert with other representatives of the State of Oregon and in furtherance of Governor Kotek's demands, made stigmatizing statements about Plaintiff that falsely and publicly implicated him in alleged wrongful and unethical conduct relating to the procurement and distribution of rare liquor.  But for the public disclosure of those statements, Plaintiff would not have been fired from his job at the OLCC.

32.

The stigmatizing statements made by Governor Kotek included but were not limited to:

A.  Statements falsely suggesting that Plaintiff had engaged in an unethical scheme to improperly obtain rare liquor for personal gain;

B.  Statements or disclosures that misrepresented the findings of the internal OLCC investigation, omitting exculpatory facts;

C.  Publicly releasing disciplinary and investigative records that Rich Evans, Travis Hampton, and other OLCC executives had previously assured Plaintiff would remain confidential; and

D.  The public statements of OLCC leadership, including Executive Director Craig Prins and Governor Tina Kotek, which implied that Plaintiff and others had violated ethics laws and could not be trusted in public service.

Page 9 -    AMENDED COMPLAINT

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: 541.383.5857 | F: 541.383.3968
3 CENTERPOINTE DRIVE, SUITE 160
LAKE OSWEGO, OREGON 97035

33.

Plaintiff disputes the accuracy of these statements, which were false, misleading, and omitted material facts, including that Plaintiff had received assurances that his conduct was lawful and that the OLCC's internal practices had permitted similar transactions for decades. The stigmatizing statements characterized Plaintiff as dishonest and lacking integrity.

34.

These stigmatizing statements and public disclosures were not accompanied by an adequate opportunity for Plaintiff to clear his name before his termination.  Defendant John Does 1-5 failed to provide Plaintiff with a name-clearing hearing or any procedural mechanism to refute the damaging allegations before making them public.

35.

In addition to harming Plaintiff's reputation, these statements were directly linked to Plaintiff's loss of a tangible interest—his employment with OLCC.  The stigmatizing conduct by Defendant John Does 1-5 resulted in:

    A. Plaintiff's wrongful termination from OLCC, despite the fact that he had been offered a continued role until construction of the new OLCC warehouse was completed and had relied on that agreement to his detriment;

    B. Significant harm to Plaintiff's future employability in public service and the private sector due to the widespread dissemination of false and damaging allegations; and

    C. Emotional and professional damage, including severe distress, humiliation, and loss of career opportunities in his field.

Page 10 -    AMENDED COMPLAINT

36.

These acts violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment by depriving him of a protected liberty interest—his reputation and his ability to continue his profession—without due process. As a result of the conduct by Defendant John Does 1, Plaintiff has been excluded from his chosen profession of management of a public agency or entity.

37.

The actions of Defendant John Does 1-5 were willful, malicious, and in reckless disregard of Plaintiff's constitutional rights.

38.

As a direct and proximate result of the unconstitutional actions of Defendant John Does 1-5, Plaintiff has suffered:

    A. Economic damages for lost wages and benefits, in an amount to be determined at trial but estimated to be at least $450,000, plus pre- and post-judgment interest; and

    B. Non-economic damages for emotional distress, reputational harm, and other suffering in an amount not less than $1,000,000, the exact amount to be determined at trial.

39.

Plaintiff is entitled to recover his reasonable attorney's fees and costs and expert witness fees pursuant to 42 U.S.C. § 1988.

///

Page 11 -    AMENDED COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against **Defendant OLCC** on his First Claim for Relief:

1. $450,000, which amount continues to increase;

2. Pre-judgment and post-judgement interest at a rate set by statute; and

3. Plaintiff's costs and disbursements incurred herein, together with such sums as the court deems equitable;

4. Such other and further relief, legal or equitable, as the Court deems appropriate.

Plaintiff prays for Judgment against **Defendant John Does 1-5** on his Second Claim for Relief:

1. Economic damages for lost wages and benefits, in an amount to be determined at trial but estimated to be at least $450,000, plus pre- and post-judgment interest;

2. Non-economic damages for emotional distress, reputational harm, and other suffering in an amount not less than $1,000,000, the exact amount to be determined at trial; and

3. Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

DATED this 20th day of April 2026.

LYNCH MURPHY MCLANE LLP

By: /s/ Matthew A. Wand
Matthew A. Wand, OSB #004189
Michelle Littlewood, OSB # 246381
Telephone: (541) 383-5857
Fax: (541) 383-5857
mwand@lynchmurphy.com
mlittlewood@lynchmurphy.com
Attorneys for Plaintiff Will Higlin

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: 541.383.5857 | F: 541.383.3968
3 CENTERPOINTE DRIVE, SUITE 160
LAKE OSWEGO, OREGON 97035

CERTIFICATE OF SERVICE

I hereby certify that on April 20th, 2026, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

**Attorneys for Defendants State of Oregon, Oregon Liquor and Cannabis Commission; Defendants John Does 1-5**

DAN RAYFIELD
Attorney General
Tracy Ickes White, OSB #904127
    Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Tracy.i.white@doj.oregon.gov

Dated this 20th day of April 2026.

                              LYNCH MURPHY MCLANE LLP

                              By: */s/ Matthew A. Wand*
                              Matthew A. Wand, OSB #004189
                              Michelle Littlewood, OSB #246381
                              Telephone: (541) 383-5857
                              Facsimile: (541) 383-3968
                              mwand@lynchmurphy.com
                              Attorneys for Plaintiff Will Higlin

Page 1 -     CERTIFICATE OF SERVICE